POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TANYA TIRADO, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | CLASS ACTION |
| v. | COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS |
| PROTERRA INC., GARETH T. JOYCE, KARINA FRANCO PADILLA, and AMY E. ARD, | DEMAND FOR JURY TRIAL |
| Defendants. | |

Plaintiff Tanya Tirado ("Plaintiff") alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based on the investigation of Plaintiff's undersigned counsel, which included, among other things, review and analysis of: (a) public statements made by or on behalf of Proterra Inc. ("Proterra" or the "Company"), including public filings with the U.S. Securities and Exchange Commission ("SEC"); (b) press releases; (c) reports of securities and financial analysts; (d) news articles; and (e) industry reports.  Plaintiff believes that substantial,

additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.  Plaintiff brings this action pursuant to the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78a, *et seq.*, and Rule 10b-5 promulgated thereunder, on behalf of Plaintiff and all persons similarly situated who purchased or otherwise acquired Proterra securities between August 11, 2021 to August 7, 2023, inclusive (the "Class Period").

2.  Proterra designs and manufactures zero-emission electric transit vehicles and electric vehicle ("EV") solutions for commercial applications.  Following its merger with ArcLight Clean Transition Corp. ("ArcLight"), Proterra billed itself to investors as a promising, market-leader in EV technology.  It claimed to have raised a sufficient amount of cash from its special purpose acquisition company ("SPAC")-related operations to support its growth and scaling-up to profitability.  Despite these claims, Proterra collapsed under the weight of its own expansion operations.  It did not have enough cash or revenue to comply with its liquidity covenants and, as a result, ultimately filed for bankruptcy.  During the Class Period, Defendants repeatedly concealed Proterra's increasing risk of insolvency despite analyst concerns and commentary.

3.  At the start of the Class Period, on August 11, 2021, Proterra issued an investor letter describing its financial earnings and operations for the quarter ended June 30, 2021.  In pertinent part, Proterra represented that it had "[a]mple cash to fund our growth plans" and "[a]s a result of the additional capital raised in our [merger transaction with ArcLight], we do not expect these investments to have a material impact on our cash needs in the years ahead.  With an unrestricted cash and short-term investment balance of $762 million as of June 30, 2021, we believe we are amply capitalized to fund our growth opportunities until we achieve our goal of positive free cash flow in a few years."  Similarly, Proterra's Chief Financial Officer ("CFO") at

2

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

the time told investors, "[a]ll in, we ended the quarter with over $750 million in cash, and we continue to believe we have more than sufficient capital to fund our business until we achieve positive free cash flow within our 5-year planning period."

4.     Defendants made similar representations about Proterra's liquidity and ability to scale-up throughout the Class Period.  For example, on August 2, 2022, Proterra's CFO described the Company's strong financial position by stating "we have . . . the balance sheet to not only ride out potential economic turbulence over the next year," and said the company had $523 million of cash and cash equivalents on their balance sheet.

5.     Contrary to these claims and representations, on March 15, 2023, Proterra announced it was in violation of a liquidity clause in their secured convertible notes.  The Company also announced they may have to qualify an audit report with a "going concern" clause.  Although analysts believed at the time that Proterra would be able to secure amendments and/or waivers to the liquidity covenants with their debt holders, the Company failed to do so.  On August 7, 2023, after market hours, Proterra announced it had filed for bankruptcy.

6.     During the Class Period, Plaintiff and other similarly situated investors bought Proterra securities at artificially inflated prices due to Defendants' false and/or materially misleading statements.  When the truth concerning the company's liquidity issues emerged, Proterra's stock price decreased resulting in significant losses to investors.  This action seeks to compensate those investors and recover the damages they sustained because of Defendants' fraudulent conduct.

## JURISDICTION AND VENUE

7.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.      This Court has subject matter jurisdiction over this action under Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

9.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b) because certain of the acts alleged herein, including the preparation and dissemination of materially false and/or misleading information, occurred in this District.

10.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly and/or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

11.     Plaintiff, as set forth in the attached Certification, acquired Proterra securities at artificially inflated prices during the Class Period and was damaged upon the revelation of Defendants' fraud.

12.     Defendant Proterra[1] was founded in 2004 and is incorporated in the State of Delaware.   Its principal executive offices are located at 1815 Rollins Road, in Burlingame, California 94010.   During the Class Period, Proterra's securities traded in an efficient market on the Nasdaq ("NASDAQ") under the symbol "PTRA".

13.     Defendant Gareth Joyce ("Joyce") is the Company's Chairman and Chief Executive Officer ("CEO").   Joyce has 10 years of experience across the transportation sector.   Joyce started at Daimler AG in 2004 and rose to president and CEO of Mercedes-Benz Canada before leaving Delta Cargo in 2016.   At Delta Air Lines, Inc., Joyce became Chief Sustainability Officer before

---

[1] Plaintiff names Proterra as a defendant only to the limit of any applicable insurance coverage that may be liable to satisfy all or part of a possible judgment in the action. *See In re Allied Dig. Techs. Corp.*, 306 B.R. 505, 513 (Bankr. D. Del. 2004) (holding D&O policy proceeds not part of estate and, in any event, stay should be lifted).

leaving to join Proterra in November 2020, and he has been the CEO of Proterra since September 2021.

14.    Defendant Karina Franco Padilla ("Padilla") was the Company's CFO in August of 2022.  Prior to joining Proterra in 2022, Padilla served as Senior Vice President of Finance and North America CFO at JELD-WEN.  Padilla also held leadership positions at Ingersoll Rand, including as interim CFO of the Latin America business unit and Vice President of Finance, Corporate Planning, and Analysis.

15.    Defendant Amy E. Ard ("Ard") was the Company's CFO from May 2017 until October 23, 2021 when she resigned.  Ard previously served as CFO for Le Tote, Inc., an online clothing rental subscription company.  She also held roles at AMG Advanced Metallurgical Group N.V., a global specialty metals and engineering company, including as the Executive Vice President and CFO from April 2013 to January 2016 and as the Senior Vice President and Corporate Controller from October 2005 to April 2013.  She also previously worked as a Division Controller at Precision Castparts Corp., an industrial goods and metal fabrication company, a Treasurer at PQ Corporation, a manufacturer of specialty chemicals and catalysts, and a Manager at PricewaterhouseCoopers LLP, a public accounting firm.

16.    Defendants Joyce, Padilla, and Ard are collectively referred to herein as the "Individual Defendants."

17.    Each of the Individual Defendants:

    (a)    directly participated in the management of Proterra;

    (b)    was directly involved in the day-to-day operations of Proterra at the highest levels;

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

(c)    was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(d)    was directly or indirectly involved in the oversight or implementation of Proterra's business and/or finances;

(e)    was aware of or deliberately recklessly disregarded the fact that the false and misleading statements were being issued concerning Proterra; and/or

(f)    approved or ratified these statements in violation of the federal securities laws.

18.    Because of the Individual Defendants' positions within Proterra, they had access to undisclosed information about the true issues with the Company's balance sheet and gross margins.

19.    As officers of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the federal securities laws of the United States, the Individual Defendants each had a duty to disseminate prompt, accurate and truthful information with respect to the Company's financial status and to correct any previously-issued statements that had become materially misleading or untrue.

20.    The Individual Defendants, because of their positions with Proterra, possessed the power and authority to control the contents of Proterra's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. Each Individual Defendant had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive

representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

21.     Each of the Individual Defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Proterra's securities by disseminating materially false and misleading statements and/or concealing material adverse facts. This scheme caused Plaintiff and other shareholders to purchase Proterra's securities at artificially inflated prices.

## SUBSTANTIVE ALLEGATIONS

### Background

22.     ArcLight was a SPAC founded in July 2020. On September 25, 2020, ArcLight completed its initial public offering ("IPO"). ArcLight had not selected any business combination target in advance of its IPO and had not commenced any substantive discussions with any targets prior to that point in time.

23.     On or around October 5, 2020, Arclight was introduced to Proterra when an ArcLight director, Ja-Chin Audrey Lee, introduced ArcLight to Proterra's Chief Technology Officer. Due diligence and negotiations ensued after that point over the course of the next several months.

24.     On January 11, 2021, ArcLight and Proterra entered into a merger agreement.

25.     On June 15, 2021, the merger closed and Proterra began trading publicly on NASDAQ.

26.     While the above negotiation and merger process was occurring, Proterra (while it was still a private company) entered into a Note Purchase Agreement for the issuance of Secured

7

Convertible Promissory Notes.  The Convertible Notes had an aggregate principal amount of $200.0 million, with a cash interest of 5.0% per annum payable at each quarter end and a paid-in-kind interest of 4.5% per annum payable by increasing the principal balance at each quarter end. The Convertible Notes had a maturity date of August 2025.  Importantly, the Note Purchase Agreement contained covenants that required Proterra to maintain liquidity at quarter end of not less than the greater of (i) $75.0 million and (ii) four times of cash burn for the three-month period then ended.

**<u>Materially False and Misleading Statements Issued During the Class Period</u>**

27.    On August 11, 2021, Proterra issued an investor letter describing its financial earnings and operations for the quarter ended June 30, 2021.  In pertinent part, Proterra represented that it had "[a]mple cash to fund our growth plans" and "[a]s a result of the additional capital raised in our [merger transaction with ArcLight], we do not expect these investments to have a material impact on our cash needs in the years ahead.  With an unrestricted cash and short-term investment balance of $762 million as of June 30, 2021, we believe we are amply capitalized to fund our growth opportunities until we achieve our goal of positive free cash flow in a few years."

28.    On the same day, Proterra held an investor conference call to discuss its financial earnings for the quarter ended June 30, 2021.  During the call, Proterra's CFO at the time, Defendant Ard, told investors, "[a]ll in, we ended the quarter with over $750 million in cash, and we continue to believe we have more than sufficient capital to fund our business until we achieve positive free cash flow within our 5-year planning period."

29.    On December 14, 2021, Proterra issued a press release titled, "Proterra Announces EV Battery Factory in South Carolina as Demand for Commercial Electric Vehicles Grows."  In pertinent part, the press release stated that:

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

As demand for commercial electric vehicles continues to grow across the United States and around the world, Proterra Inc (NASDAQ: PTRA), a leading innovator in commercial vehicle electrification technology, today announced plans to open a new EV battery system manufacturing plant in South Carolina to produce the company's industry-leading battery systems for Proterra Powered customers' commercial electric vehicles, including delivery and work trucks, industrial equipment, buses, and more.

\* \* \*

Proterra has committed to a minimum investment of at least $76 million, with additional investments planned over the next several years, and expects to create more than 200 new jobs over the next several years at the 327,000 square foot battery system production plant. The factory is expected to launch in the second half of 2022 with multiple gigawatt hours of annual production capacity for Proterra's battery systems. By 2025, the factory is expected to support additional battery system production capacity, as well as the production of ancillary systems incorporated into electric medium- and heavy-duty electric vehicles and equipment.

30.     On August 20, 2022, Proterra released its quarterly earnings for the second quarter of 2022 in a quarterly letter. Defendant Joyce signed the quarterly letter on behalf of the Company. The "Highlights" section of the earnings release stated the Company had "$523M in cash, cash eq, and short term investments." The Company said the new factory was "on target for start of production before the end of 2022," and "we expected it to provide greater scale and production efficiency to support better margins." The Company described its financial stability by stating:

With $523 million of cash, cash equivalents, and short-term investments as of the end of Q2 2022, our new Greer factory adding multiple GWh of new battery manufacturing capacity, Proterra Powered partnerships to develop or supply battery systems with more than a dozen OEMs across 20 vehicle programs, and approximately $1.3 billion in federal grant programs available to the industry for zero emission transit buses and chargers in fiscal year 2022, we believe we have the technology, the product, the competitive positioning and the balance sheet to not only ride out potential economic turbulence over the next year but to emerge as a central player of this developing market.

31.     On the same day the Company released their earnings for the second quarter of 2022, they had an earnings call that included Defendants Joyce and Padilla. Defendant Joyce touted the Company's growth and execution "while sustaining a strong balance sheet with more than a $0.5 billion in cash and equivalents as of June 30." Defendant Joyce described the

9

Company's approach in 2022 by saying "early on this year, we began assessing a strategy of operational and capital disciplines throughout the organization focused on enduring growth that prioritizes margin improvement over revenue growth, cash preservation without sacrificing our growth investments and focusing on core growth opportunities that can provide the highest return on capital as well as the fastest return of capital.  We continue to be supported by a healthy balance sheet with more than $520 million in cash and equivalents as of June 30 and I reassure you it's not one we take for granted in any way, shape, or form."

32.     During that earnings call, Defendant Padilla touted the Company's sequential gross margin improvement and said "we retain a healthy balance of cash and equivalents on our balance sheet of more than $520 million as of June 30."  Defendant Padilla also stated the Company's new factory would "allow us to multiply our existing battery production capacity several times.  This positions us for growth on revenue, improved margins and cash flow in the years ahead." Defendant Padilla also said "our underlying gross margin should continue to improve in the years ahead from higher pricing that balances our cost, greater production volumes and scale benefits and improvement in our labor efficiency, more effective supply chain and greater manufacturing efficiencies overall as we bring our new manufacturing capacity online."

33.     Defendant Padilla discussed the strength of the Company's balance sheet at length during the call by stating:

> Lastly, on the cash front.  Our balance sheet remains strong with $523 million in cash and equivalents as of June 30 sets us apart from others.  The health of our balance sheet is not coincidental.  Liquidity is a priority, it always has been and will continue to be.  But we will continue to invest responsibly in battery capacity expansion, product research and development and across our operations to support our growth strategy for the years to come . . . . I cannot emphasize enough that we understand the importance of prudent cash management especially in such volatile times.  Despite the challenging environment we are all currently facing, I believe we are in an excellent position to ride out any potential economic downturn on the horizon and have ample room to improve our gross margins over time as supply

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

chain and inflation headwinds normalize and as we ramp up our new capacity to full production.

34.     On November 2, 2022, the Company released quarterly earnings for the third quarter of 2022 in a quarterly letter.  Defendant Joyce signed the quarterly letter on behalf of the Company.  The "Highlights" section of the earnings release stated the Company had "$409M in cash, cash equivalents, and short-term investments."  The Company stated "the third quarter of 2022 was a breakthrough quarter for Proterra.  We reported record quarterly revenue surpassing $96 million, representing growth of 55% compared to Q3 2021 and 29% compared to our prior record in Q2 2022."  The Company also stated "we are trimming our guidance for 2022 capital expenditures to a range of $70 million to $80 million, as we approach completion of the first phase of our Powered 1 factory."

35.     On the same day the Company released its earnings for the third quarter of 2022, Defendants had an earnings call that included Defendants Joyce and Padilla.  Defendant Joyce stated "Q3 2022 was a breakthrough quarter for Proterra.  Not only did we report record quarterly revenue of $96 million, almost 30% above our prior record in Q2 2022, but this was driven by new highs in revenue across both our business units, along with record production and deliveries at Proterra Transit."

36.     During the call, Defendant Joyce continued to describe the Company's financial strength:

> All in, as you can see, Q3 was a breakthrough quarter for us all round. Based on our performance through the first 3 quarters and our current views on Q4, which has 17% fewer working days than Q3 due to the holidays, and downtime for year-end inventory, we are maintaining our 2022 revenue guidance range of $300 million to $325 million, representing growth of 24% to 34% year-over-year.

37.     Defendant Padilla also described the Company's "record-breaking" revenue:

> Consolidated revenue was $96.2 million, representing growth of 55% year-over-year and 29% sequentially. Proterra Powered and Energy grew 239% year-over-year and 68% sequentially to reach $39.9 million in quarterly revenue for the first

11

time. Proterra Powered and represented more than 40% of total revenue in the quarter, more than doubling its 19% contribution in Q3 of the prior year. For perspective, we reported more revenue in the third quarter of 2022 than we did through the first 3 quarters of 2021 combined.

38.     Defendant Padilla also emphasized the importance of liquidity for the Company by stating "we continue to be supported by [a] strong balance sheet, ending the quarter with $408 million in cash, cash equivalents and short-term investments." Defendant Padilla went on:

Cash and liquidity is a top priority for us, and it will continue to be. We are allocating our cash to the areas we believe are most critical to reinforcing our market leadership and position us for growth in the years ahead. Ending the quarter with a cash and cash equivalents balance of more than $400 million, we believe we have the flexibility to navigate these times of economic uncertainty and capital market volatility in an advantageous competitive position just as electric commercial vehicle adoption begins to accelerate.

39.     Defendants' statements referenced in ¶¶ 27-38 constituted violations of the securities laws because the statements were false and/or misleading as well as failed to disclose material adverse facts about the Company's financial status. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company was not adequately funded to support the expansion and scaling plans it pursued; (ii) the Company's cash and cash equivalents it had on its balance sheet did not provide the Company with abundant liquidity and financial stability; (iii) the Company's expansion initiatives, including the new South Carolina factory, would not continue to improve production efficiency and gross margins; (iv) the Company's revenue was insufficient to support its expansion and scaling initiatives; and (v) as a result, the Company faced heightened insolvency and illiquidity risks, including from covenants in the Note Purchase Agreement.

**The Truth Emerges**

40.     On March 15, 2023, Proterra released quarterly earnings for the fourth quarter of 2022 in a quarterly letter. The Company announced it had a net loss of $81 million and a gross loss of $20.3 million in the fourth quarter of 2022.

12

41. The Company also announced that it expected the audit report included in its 10-K annual report would contain a going concern qualification, which would be an event of default under Company debt agreements. The Company also announced it had obtained a limited waiver under its convertible notes for violating a minimum liquidity covenant.

42. When the smoke cleared at the end of the trading day, Proterra's stock price had dropped from its March 15, 2023 closing price of $2.51 to a March 16, 2023 closing price of $1.16—*a staggering loss of $1.35 per share representing nearly 53% of its value*. The volume of shares traded that day was more than ten times as high as the daily average volume during the Class Period.

43. In spite of the Company's announcement, analysts believed that Proterra would successfully avoid default under the terms of its Note Purchase Agreement. For example, on March 17, 2023, D.A. Davidson issued a report telling investors that it was "maintaining our BUY rating on PTRA" and that while the stock was "down over 70% . . . due to a technical debt default," they believed the "sell-off is far overdone, as these types of defaults are typically resolved through the least-drastic means possible." Unfortunately, the insolvency risks faced by Proterra did not dissipate but instead materialized into bankruptcy.

44. On August 7, 2023, after market hours, Proterra announced that it had filed for bankruptcy under Chapter 11 of the U.S. Bankruptcy Code. In pertinent part, Proterra stated as follows:

> Proterra Inc (Nasdaq: PTRA) ("Proterra" or the "Company"), a leading innovator in commercial vehicle electrification technology, today announced that the Company is taking action to maximize the value of its business and enhance the potential of each of its product lines. To do so, Proterra has voluntarily filed for protection under Chapter 11 of the U.S. Bankruptcy Code in the District of Delaware in an effort to strengthen its financial position through a recapitalization or going-concern sale.

The Company intends to continue to operate in the ordinary course of business as it moves through this process and plans to file the customary motions with the Bankruptcy Court to use existing capital to fund operations, including paying employee salaries and benefits, and compensating vendors and suppliers on a go-forward basis in accordance with Chapter 11 rules, all while ensuring business continuity for customers.

45.     In response to this news, Proterra's stock price plummeted. On August 7, 2023, Proterra's stock price closed at $1.43 per share. The following day, on August 8, 2023, Proterra's stock price declined to $0.17 per share.

## LOSS CAUSATION

46.     The market for Proterra common stock was open, well-developed, and efficient at all relevant times.  As a result of the materially false and/or misleading statements, and/or failures to disclose, as alleged herein, Proterra stock traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Proterra stock relying upon the integrity of the market of Proterra and market information related to the Company and have been damaged thereby.

47.     During the Class Period, Defendants named in this action materially misled the investing public, thereby inflating the price of Proterra stock, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make their own statements, as set forth herein, not false and/or misleading.  Said statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about Proterra's business, operations, and prospects as alleged herein.

48.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the

Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Proterra's financial issues.  These material misstatements and/or omissions had the cause and effect of creating and/or maintaining in the market an unrealistically positive assessment of the Company and its operations, thus causing the Company's stock to be overvalued and artificially inflated at all relevant times.  The materially false and/or misleading statements made by Defendants named in this action during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

49.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that caused the price of Proterra stock to be artificially inflated by failing to disclose and/or misrepresenting the adverse facts detailed herein.  As Defendants' misrepresentations and fraudulent conduct were gradually disclosed and became apparent to the market, the artificial inflation in the price of Proterra's stock was removed, and the price of Proterra stock fell.

50.     As a result of their purchases of Proterra stock during the Class Period at artificially inflated prices, Plaintiff and the other Class members suffered economic loss, *i.e.*, damages, under the federal securities laws.  Indeed, at the start of the Class Period, Proterra's stock price traded at $12.02 per share and, at the end of the Class Period, traded for only $0.17 per share.  Proterra's market capitalization was almost completely eliminated, resulting in widespread investor losses.

51.     The timing and magnitude of the price decline in Proterra stock negate any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to the Proterra Defendants' fraudulent conduct.

1

## NO SAFE HARBOR; INAPPLICABILITY OF BESPEAKS CAUTION DOCTRINE

2

3   52.    The statutory safe harbor provided for forward-looking statements under certain

circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.

4

The statements alleged to be false and misleading herein all relate to then-existing facts and

5

conditions.   In addition, to the extent certain of the statements alleged to be false may be

6

7   characterized as forward-looking, they were not identified as "forward-looking statements" when

8   made and there were no meaningful cautionary statements identifying important factors that could

9   cause actual results to differ materially from those in the purportedly forward-looking statements.

10  In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-

11  looking statements pleaded herein, Defendants are liable for those false forward-looking

12  statements because at the time each of those forward-looking statements was made, the speaker

13

had actual knowledge that the forward-looking statement was materially false or misleading,

14

and/or the forward-looking statement was authorized or approved by an executive officer of

15

16  Proterra who knew that the statement was false when made.  The statements alleged to be false

17  and misleading herein all relate to then-existing facts and conditions.

18   ## PLAINTIFF'S CLASS ACTION ALLEGATIONS

19

20   53.    Plaintiff brings this action on behalf of all individuals and entities who purchased

Proterra securities on the public market during the Class Period, and were damaged, excluding

21

Proterra, the Individual Defendants and each of their immediate family members, legal

22

23  representatives, heirs, successors or assigns, and any entity in which any of the Defendants have

24  or had a controlling interest (the "Class").

25   54.    The Class members are so numerous that joinder of all members is impracticable.

26  Throughout the Class Period, shares of Proterra common stock were actively traded on the

27  NASDAQ. While the exact number of Class members is unknown at this time and can be

28

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other Class members may be identified from records maintained by Proterra or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. As of the filing of its most recent annual report on March 13, 2023, Proterra had over 226.4 million shares of common stock outstanding. Upon information and belief, these shares are held by thousands of individuals located throughout the entire world. Joinder would be highly impracticable.

55.     Plaintiff's claims are typical of the claims of the Class members as all Class members are similarly affected by the Defendants' respective wrongful conduct in violation of the federal laws complained of herein.

56.     Plaintiff has and will continue to fairly and adequately protect the interests of the Class members and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

57.     Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by the Defendants' respective acts as alleged herein;

(b)     whether the Defendants acted knowingly or with deliberate recklessness in issuing false and misleading statements concerning Proterra's financial status;

(c)    whether the price of Proterra's securities during the Class Period was artificially inflated because of the Defendants' conduct complained of herein; and

(d)    whether the Class members have sustained damages and, if so, what is the proper measure of damages.

58.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

59.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that, at all relevant times, the market for Proterra stock was an efficient market for the following reasons:

(a)    Proterra stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)    As a regulated issuer, Proterra filed periodic public reports with the SEC and the NASDAQ;

(c)    Proterra communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)    During the Class Period, on average, millions of Proterra shares were traded on a weekly basis. On news days, the Company's trading volume increased

into the millions, reflecting an active trading market for Proterra stock and investors' expectations being impounded into the stock price.

60.     As a result of the foregoing, the market for Proterra's securities promptly digested current information regarding Proterra from all publicly available sources and reflected such information in Proterra's stock price.  Under these circumstances, all purchasers of Proterra securities during the Class Period suffered similar injury through their purchase of Proterra securities at artificially inflated prices, and a presumption of reliance applies.

61.     Alternatively, reliance need not be proven in this action because the action involves omissions and deficient disclosures.  Positive proof of reliance is not a prerequisite to recovery pursuant to the ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972).  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.

## **COUNT I**

### **(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

62.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

63.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other Class members to purchase Proterra securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, each of the Defendants took the actions set forth herein.

64.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of Proterra securities in an effort to maintain artificially high market prices for Proterra securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

65.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's financial status as specified herein.

66.     These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Proterra's value, performance, and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Proterra's financial status under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Proterra securities during the Class Period.

67.     The Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) the Individual Defendants were high-level executives, directors, and/or agents at Proterra during the Class Period and members of Proterra's management team or had control thereof; (2) each Individual Defendant, by virtue of their responsibilities and activities

20

as a senior officer and/or director of Proterra, was privy to and participated in the creation, development and reporting of Proterra's SEC filings and public statements concerning Proterra's financial status; (3) each Individual Defendant enjoyed significant personal contact and familiarity with the other Individual Defendants and was advised of and had access to other members of Proterra's management team, internal reports, and other data and information about Proterra's financial status, at all relevant times; and (4) each Individual Defendant was aware of Proterra's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

68.    Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing fundamental problems with Proterra's financial status that led to disappointing results from the investing public and supporting the artificially inflated price of its common stock.  As demonstrated by Defendants' misrepresentations concerning the fundamental problems and risks inherent in Proterra's financial status throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

69.    As a result of the dissemination of materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Proterra securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of Proterra securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock

trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other Class members acquired Proterra securities during the Class Period at artificially high prices and were or will be damaged thereby.

70.     At the time of said misrepresentations and omissions, Plaintiff and other Class members were ignorant of their falsity and believed them to be true.  Had Plaintiff and the other Class members and the marketplace known the truth regarding the risks and flaws inherent in Proterra's financial status, which was not disclosed by Defendants, Plaintiff and other Class members would not have purchased or otherwise acquired their Proterra securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

71.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

72.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other Class members suffered damages in connection with their respective purchases and sales of Proterra securities during the Class Period.

73.     This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of common stock giving rise to the cause of action.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

74.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

75.     The Individual Defendants acted as controlling persons of Proterra within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level

positions, agency, ownership and contractual rights, and participation in and/or awareness of Proterra's operations and/or intimate knowledge of the false information filed by Proterra with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of Proterra, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of Proterra's financial statements, reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

76.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Proterra and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein and exercised the same.

77.     As set forth above, Proterra and the Individual Defendants each violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

78.     By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other Class members suffered damages in connection with their purchases of Proterra's common stock during the Class Period.

79.     This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of common stock giving rise to the cause of action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment as follows:

(a)     Determining that this action is a proper class action, certifying Plaintiff as class representative under Federal Rule of Civil Procedure 23 and Plaintiff's counsel as class counsel;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of the Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

In accordance with Fed. R. Civ. P. 38(b), Plaintiff demands a jury trial of all issues involved, now, or in the future, in this action.

Dated:  September 1, 2023                                Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

jalieberman@pomlaw.com
ahood@pomlaw.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS